UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

San Francisco Division

| | |
|---|---|
| NATALIE OCEGUEDA, derivatively on behalf of Facebook,<br><br>Plaintiff,<br><br>v.<br><br>MARK ZUCKERBERG, et al.,<br><br>Defendants. | Case No. 20-cv-04444-LB<br><br>**ORDER GRANTING MOTION TO DISMISS**<br><br>Re: ECF No. 46 |

## INTRODUCTION

In this shareholder derivative action, the Facebook defendants (nominal defendant Facebook and members of its board of directors and executive team) moved to dismiss the complaint, which challenges Facebook's alleged lack of diversity (on its board and executive team, and in its workplace), its allegedly discriminatory advertising practices, and its failure to curb hate speech as (1) a violation of the directors' fiduciary duty to the corporation and its shareholders and (2) false and misleading statements (because they contradict Facebook's public proxy statements about its commitment to diversity), in violation of § 14(a) of the Exchange Act, 15 U.S.C. § 78n(a), and SEC Rule 14a-9, 17 C.F.R. § 240.14a-9. The defendants moved to dismiss in part on the following grounds. First, the plaintiff did not make a pre-suit demand on the board or plead with particularity that a demand was excused as futile, as required by Federal Rule of Civil Procedure 23.1. Second, the plaintiff sued in the wrong forum: Facebook's Restated Certificate of Incorporation has a

ORDER – No. 20-cv-04444-LB

binding forum-selection clause requiring derivative actions to be filed in the Delaware Court of Chancery. Third, the plaintiff did not plausibly state a § 14(a) claim because she did not identify any materially false and misleading statements, in violation of Rule 8(a) and the heightened pleading standards of Rule 9(b) and the Private Securities Litigation Reform Act of 1995 (PLSRA).

The court grants the motion to dismiss. The plaintiff did not make a pre-suit demand, and her excuses — the defendants' disregard of unlawful practices, alleged liability for false statements, and lack of independence — do not plausibly plead futility. The forum-selection clause also precludes the lawsuit here. Finally, the plaintiff's allegations do not plausibly plead a materially false statement under § 14(a) primarily because the aspirational assertions in the proxy statements are non-actionable.

**STATEMENT**

Facebook, a social network, is a Delaware corporation headquartered in Menlo Park, California.[1] Its May 22, 2012 Restated Certificate of Incorporation has a forum-selection clause:

> Unless the corporation consents in writing to the selection of an alternative forum, the Court of Chancery of the State of Delaware shall, to the fullest extent permitted by law, be the sole and exclusive forum for (1) any derivative action or proceeding brought on behalf of the corporation, (2) any action asserting a claim of breach of a fiduciary duty owed by, or other wrongdoing by, any director, officer, employee or agent of the corporation to the corporation or the corporation's stockholders, . . . in each such case subject to said Court of Chancery having personal jurisdiction over the indispensable parties named as defendants therein. Any person or entity purchasing or otherwise acquiring any interest in shares of capital stock of the corporation shall be deemed to have notice of and consented to the provisions of this ARTICLE IX.[2]

It also has a limitation-of-liability clause for its directors:

---

[1] Compl. – ECF No. 1 at 18 (¶ 37). Citations refer to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of documents.

[2] Restated Certificate of Incorporation, Ex. F to Barry Decl. – ECF No. 47-6 at 14 (Art. IX). To the extent that the court references documents that Facebook submitted, it does so by judicial notice for the public filings or under the incorporation-by-reference doctrine for the other documents. Fed. R. Evid. 201(b) (*e.g.*, SEC filings, Exs. A–K); *In re Intel Corp. Sec. Litig.*, No. 18-cv-00507-YGR, 2019 WL 1427660, at *6 (N.D. Cal. Mar. 29, 2019) (same); *Knievel v. ESPN*, 393 F.3d 1068, 1076 (9th Cir. 2005) (*e.g.*, Exs. B–D and G, referenced throughout the complaint).

1. **Limitation of Liability.** To the fullest extent permitted by law, no director of the corporation shall be personally liable to the corporation or its stockholders for monetary damages for breach of fiduciary duty as a director. . . .[3]

Plaintiff Natalie Ocegueda has been a Facebook shareholder since she bought her stock on May 21, 2012.[4] The defendants are members of Facebook's board of directors, or were previously, and some also are members of its executive team. Their names — which are relevant to the plaintiff's individual challenges to them (as discussed in the analysis) — are Mark Zuckerberg (also Facebook's founder, chairman, and CEO), Sheryl Sandberg (also Facebook's COO), Marc Andreessen, Andrew Houston, Erskine Bowles (director from September 2011 to at least April 12, 2019), Jeffrey Zients (director from May 2018 to April 10, 2020), Susan Desmond-Hellman (director from March 2013 to October 30, 2019), Nancy Killefer, Tracey Travis, Robert Kimmitt, Reed Hastings (director from June 2011 to at least April 12, 2019), and Peter Thiel.[5]

The plaintiff alleges that the directors ignored red flags about Facebook's unlawful business practices — its lack of diversity (on the board, in senior management, and in its workplace), its discriminatory advertising, and its failure to curb hate speech — and thereby violated their fiduciary duty to the company and its shareholders and rendered materially false the assertions in Facebook's 2019 and 2020 proxy statements that Facebook is committed to diversity and inclusion.[6]

First, as to Facebook's lack of diversity, the plaintiff points to the composition of Facebook's board, its executive team, and its employees. She alleges that the board has only one black member and that, "[w]hile Facebook states that it is committed to building a diverse workforce, . . . there are no Blacks or other minorities among its senior executives.[7] Also, "[i]nstead of recommending well-qualified Black and minority candidates," the board's nominating committee has "perpetuated a lack of diversity on the Board under the pretext that the existing members' 'experience' and long

---

[3] Restated Certificate of Incorporation, Ex. F to Barry Decl. – ECF No. 47-6 at 13 (Art. VII).

[4] Compl. – ECF No. 1 at 18 (¶ 36).

[5] *Id.* at 18–20 (¶¶ 38–50).

[6] *Id.* at 13–14 (¶¶ 22–28); Opp'n – ECF No. 51 at 11–17.

[7] Compl. – ECF No. 1 at 38–39 (¶¶ 102, 104).

ORDER – No. 20-cv-04444-LB                3

tenure on the Board is beneficial to Facebook."[8] She alleges that Facebook discriminates in its hiring and promotion, quoting a July 2018 newspaper article about a Facebook diversity report: "Facebook is inching toward increasing the diversity of its workforce but it still has a big problem: It's hiring very few black and Hispanic women."[9] A November 2018 article reported a former Black employee's experiences at Facebook and his assessment of a corporate environment that marginalized Black employees.[10]

Second, as to Facebook's discriminatory advertising practices, she cites Facebook's CEO Mark Zuckerberg's April 2018 testimony before the Senate Judiciary Committee about Facebook's advertising practices, which allowed advertisers to discriminate by race in housing ads. This testimony allegedly showed the board's knowledge of the issue. Despite its knowledge, the "illegal and discriminatory advertising continued and even proliferated" after the Congressional hearing.[11] In August 2018, the U.S. Department of Housing and Urban Development "filed a complaint" alleging that Facebook violated the Fair Housing Act by allowing advertisers to target ads to Facebook users based on race and color (among other categories) by targeting certain zip codes.[12] In September 2018, the ACLU sued Facebook for gender discrimination on the ground that Facebook allowed advertisers to target men for "Help Wanted" and job ads.[13] In March 2019, Facebook settled five lawsuits and eliminated the ability of advertisers to target based on age, gender, and ZIP code for all ads offering housing, employment, or credit opportunities.[14]

---

[8] *Id.* at 60 (¶ 146).

[9] *Id.* at 25 (¶ 64) (quoting Jessica Guynn, *Facebook's diversity efforts failing African-American and Hispanic women*, U.S.A. TODAY, July 12, 2018).

[10] *Id.* at 27 (¶ 69) (quoting Jessica Guynn, *Facebook has a problem with black people, former employee charges*, U.S.A. TODAY, Nov. 27, 2018).

[11] *Id.* at 22–25 (¶¶ 57–63).

[12] *Id.* at 26 (¶¶ 65–66).

[13] *Id.* (¶ 67).

[14] *Id.* at 29 (¶ 76).

Third, the plaintiff alleges that Facebook did not stop hate speech, including allegedly incendiary posts from then President Donald Trump in May 2020, which resulted in protests from Facebook employees and announcements by advertisers in June 2020 that they would boycott Facebook.[15]

Fourth, the plaintiff alleges that these practices contradict the representations in Facebook's 2019 and 2020 proxy statements that it is committed to diversity and inclusion, including "building a workforce that is as diverse as the communities [it] serves" and including individuals from diverse backgrounds at the board level.[16]

The Facebook defendants contest the plaintiff's allegations that Facebook's practices are unlawful, emphasizing its commitment to diversity and inclusion and citing — among other things — the actual composition of its board and its nomination process: two of nine directors are Black, a third Black director stepped down in March 2020 to join Berkshire Hathaway, four of nine directors are women, one is openly gay, and, since its adoption of its diversity policy in 2018, a majority of new nominees have been Black or women. It identifies diversity in its senior executives: several are non-white, including the head of infrastructure engineering, the head of new-product experimentation, the head of workplace, the Chief Diversity Officer, and the former Chief Marketing Officer. It points to its resolution of the advertising issues and its reaction to the Trump speech issues.[17]

The plaintiff's complaint has the following claims: (1) breach of fiduciary duty (against all defendants); (2) aiding and abetting the breach of fiduciary duty (against all defendants); (3) abuse of control (against Mark Zuckerberg); (4) unjust enrichment (against all defendants); and (5) false and misleading statements (against all defendants), in violation of § Section 14(a) of the Exchange Act, 15 U.S.C. § 78n(a), and SEC Rule 14a-9, 17 C.F.R. § 240.14a-9.[18] She did not make a pre-suit

---

[15] *Id.* at 3–4 (¶¶ 4–5), 10 (¶ 16), 30–31 (¶¶ 79–80).

[16] *Id.* at 21–22 (¶¶ 52–53), 38 (¶¶ 100–01).

[17] Mot. – ECF No. 46 at 11–17 (citing Compl. – ECF No. 1 at 3, 10–13, 18–22, 26, 29–33, 39, 70 (¶¶ 1, 17–21, 37–49, 52, 65–67, 76, 79–84, 103, 183)); 2020 Proxy Statement, Ex. B to Barry Decl. – ECF No. 47-2 at 11–14, 64, 68, 93; 2019 Proxy Statement, Ex. C to Barry Decl. – ECF No. 47-3 at 51–52, 54; Zuckerberg Post, Ex. D to Barry Decl. – ECF No. 47-4 at 2.

[18] Compl. – ECF No. 1 at 79–83 (¶¶ 222–47).

1  demand under Rule 23.1 and alleged that it would be futile because the defendants abandoned their
2  duties wholesale (ignoring red flags of unlawful practices), they face a substantial likelihood of
3  liability for their false statements in the 2019 and 2020 proxy statements, and Facebook's CEO and
4  COO cannot exercise independent and disinterested judgment.[19]

5  The defendants moved to dismiss under Rules 12(b)(6) and (as to ripeness) 12(b)(1) on the
6  following grounds: (1) the plaintiff's failure to make a pre-suit demand or plausibly allege futility;
7  (2) the forum-selection clause precludes the lawsuit here; (3) the plaintiff did not plausibly plead a
8  claim for materially false or misleading statements; and (4) the plaintiff seeks speculative damages
9  that are not ripe. The parties agreed that the defendants would defer their arguments under Rule
10 12(b)(6) that the plaintiff did not plausibly plead her state-law claims for breach of fiduciary duty,
11 aiding and abetting a breach of fiduciary duty, abuse of control, and unjust enrichment.[20]

12 The court held hearing on March 18, 2021. All parties consented to magistrate-judge
13 jurisdiction and do not dispute that the court has subject-matter jurisdiction because there is
14 federal-question jurisdiction for the Exchange Act claim and supplemental jurisdiction for the
15 state-law claims. 28 U.S.C. § 1331; 15 U.S.C. § 78aa; 28 U.S.C. § 1367.[21]

## LEGAL STANDARD

A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief" to give the defendant "fair notice" of what the claims are and the grounds upon which they rest. Fed. R. Civ. P. 8(a)(2); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). A complaint does not need detailed factual allegations, but "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic

---

[19] *Id.* at 71–76 (¶¶ 188–207); Opp'n – ECF No. 51 at 20–28.

[20] Mot. – ECF No. 46 at 10 & n.2.

[21] Consent – ECF Nos. 10, 13, 33; Compl. – ECF No. 1 at 16–17 (¶¶ 31–32) (also alleges diversity jurisdiction under 28 U.S.C. § 1332 because the parties are diverse and the amount in controversy exceeds $75,000).

ORDER – No. 20-cv-04444-LB     6

recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a claim for relief above the speculative level[.]" *Twombly*, 550 U.S. at 555 (cleaned up).

To survive a motion to dismiss, a complaint must contain sufficient factual allegations, which when accepted as true, "'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id*. (citing *Twombly*, 550 U.S. at 557). "Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id*. (cleaned up) (quoting *Twombly*, 550 U.S. at 557).

For § 14(a) claims alleging that a defendant made an untrue statement of material fact (or omitted a material statement), the complaint must specify each statement alleged to be misleading and the reason or reasons why the statement is misleading and, if an allegation regarding the statement is made on information or belief, the complaint must "state with particularity all facts on which that belief is formed." 15 U.S.C. § 78u-4(b)(1); *Desaigoudar v. Meyercord*, 223 F.3d 1020, 1023 (9th Cir. 2000). In any case where plaintiffs may recover damages only on proof that a defendant acted with a particular state of mind, the complaint must "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." 15 U.S.C. § 78u-4(b)(2); *In re Zoran Derivative Litig.*, 511 F. Supp. 2d 986, 1012 (N.D. Cal. 2007).

If a plaintiff's federal securities claim sounds in fraud, then the heightened pleading standards of Rule 9(b) apply. *In re Zoran*, 511 F. Supp. 2d at 1010. "In alleging fraud . . . a party must state with particularity the circumstances constituting fraud. . . . Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). "Averments of fraud must be accompanied by the 'who, what, when, where, and how' of the misconduct charged." *Vess v. Ciba–Geigy Corp. USA*, 317 F.3d 1097, 1106 (9th Cir. 2003).

Like the basic "notice pleading" demands of Rule 8, Rule 9(b) assures that defendants are given fair notice of the charges against them. *In re Lui*, 646 F. App'x 571, 573 (9th Cir. 2016) ("Rule 9(b)

demands that allegations of fraud be specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong.") (quotation omitted); *Odom v. Microsoft Corp.*, 486 F.3d 541, 553 (9th Cir. 2007) (Rule 9(b) requires particularity "so that the defendant can prepare an adequate answer").

If a court dismisses a complaint, it should give leave to amend unless the "pleading could not possibly be cured by the allegation of other facts." *United States v. United Healthcare Ins. Co.*, 848 F.3d 1161, 1182 (9th Cir. 2016) (cleaned up).

## ANALYSIS

The court dismisses the complaint because the plaintiffs did not make a pre-suit demand or plead plausibly that a demand was excused as futile, the forum-selection clause precludes a lawsuit here, and the plaintiffs did not plausibly plead a § 14(a) claim.

**1. Futility**

A shareholder bringing a derivative action "must state with particularity: (A) any effort by the plaintiff to obtain the desired action from the directors. . . ; and (B) the reasons for not obtaining the action or making the effort." Fed. R. Civ. P. 23.1(b)(3)(B). The plaintiff did not make a demand but alleged that it would be futile because the defendants are not disinterested, ignored unlawful practices, and face substantial liability for their conduct and the false statements in the proxy statements, and Facebook's CEO and COO are not independent.[22] The plaintiff must plead with particularity why the demand would be futile. *In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 989 (9th Cir. 1999); *In re Facebook, Inc. S'holder Derivative Privacy Litig.*, 367 F. Supp. 3d 1108, 1123 (N.D. Cal. 2019). The plaintiff has not plausibly alleged any facts about the directors' actual or constructive knowledge of illegal conduct, their failure to act, or their lack of independence, and thus she has not pled futility with particularity.

---

[22] Compl. – ECF No. 1 at 71–79 (¶¶ 188–221); Opp'n – ECF No. 51 at 20–28.

Rule 23.1 controls the adequacy of the pleadings, but Delaware law controls whether a demand is futile because Delaware is Facebook's state of incorporation. *City of Birmingham Relief & Ret. Sys. v. Hastings*, No. 18-cv-02107-BLF, 2019 WL 3815722, at *4 (N.D. Cal. Feb. 13, 2019). The parties agree on the legal standard under Delaware law.[23] The "directors are entitled to a *presumption* that they were faithful to their fiduciary duties," and "the burden is on the plaintiff in a derivative action to overcome that presumption." *In re Facebook*, 367 F. Supp. 3d at 1123 (quoting *Beam ex. rel. Martha Stewart Living Omnimedia, Inc. v. Stewart*, 845 A.2d 1040, 1048–49 (Del. 2004)). The demand is excused if the plaintiff alleged particularized facts that "create a reasonable doubt that, as of the time the complaint is filed, the board of directors could have properly exercised its independent and disinterested business judgment in responding to a demand." *Rales v. Blasband*, 634 A.2d 927, 934 (Del. 1993). Directors are deemed "interested" only "when the potential for liability is not a mere threat and instead may rise to a substantial likelihood." *Ryan v. Gifford*, 918 A.2d 341, 355 (Del. Ch. 2007).

This inquiry focuses on the capability of the board — at the time the lawsuit is filed — to consider the pre-suit demand. *Id.* A court assesses demand futility on a director-by-director basis, and the complaint must "plead facts *specific to each director*, demonstrating that at least half of them could not have exercised disinterested business judgment in responding to a demand." *In Re Facebook*, 367 F.3d at 1124 (quoting *Desimone v. Barrows*, 924 A.2d 908, 943 (Del. Ch. 2007)); *accord Towers v. Iger*, 912 F.3d 523, 539 (9th Cir. 2018). Furthermore, where "directors are contractually or otherwise exculpated from liability for certain conduct, then a serious threat of liability may [] be found to exist [only] if the plaintiff pleads a non-exculpated claim against the directors based on particularized facts." *Facebook*, 367 F.3d at 1124 (cleaned up) (quoting *Wood v. Baum*, 953 A.2d 136, 141 (Del. 2008)).

---

[23] Mot. – ECF No. 46 at 18; Opp'n – ECF No. 51 at 19; *see In re CNET Networks, Inc.*, 483 F. Supp. 2d 947, 954 (N.D. Cal. 2007) (setting forth two-part test under Delaware law, the test for decisions made by a board of directors and the test where the directors did not make the decision (citing *Aronson v. Lewis*, 473 A.2d 805, 814 (Del. 1984)).

Facebook's certificate of incorporation exculpates its directors from personal liability for breaches of fiduciary duty "to the fullest extent permitted by law."[24] Thus, the plaintiff must "plead particularized facts that demonstrate that the directors acted with scienter, i.e., that they had actual or constructive knowledge that their conduct was legally improper." *Wood*, 953 A.2d at 141; *see In re Facebook*, 367 F. Supp. 3d at 1124.

The plaintiff contends that a demand is excused as futile because (1) directors Zuckerberg, Sandberg, Andreessen, Thiel, Houston, Killefer, Travis and Kimmitt face substantial liability for ignoring red flags about Facebook's unlawful conduct, and directors Andreessen, Thiel, Travis, and Houston, as members of the audit committee, consciously disregarded the red flags, (2) the directors — directors Zuckerberg, Sandberg, Andreessen, and Thiel for the 2019 proxy statement and directors Zuckerberg, Sandberg, Andreessen, Thiel, Houston, Killefer, Travis and Kimmitt for the 2020 proxy statements — face substantial liability for disseminating false statements in the proxy statements, and (3) CEO Zuckerberg and COO Sandberg cannot exercise independent and disinterested judgment.[25]

First, as to the directors' liability for ignoring red flags about Facebook's allegedly illegal conduct, some of the plaintiff's allegations — about diversity on the board, the problematic nomination process, and the diversity of senior executives — are contradicted by the record about the actual composition of the board and the nomination process. As to the advertising practices, Mr. Zuckerberg's Congressional testimony is not plausibly a red flag either. The timeline of the advertising conduct — May 2018 testimony, August 2018 HUD complaint, and September 2018 lawsuit — was relatively short and resulted in Facebook's resolving the challenges to the advertising practices by March 2019 (and not ignoring them). The newspaper articles about diversity and inclusion in the workplace identify issues, but the plaintiff has not alleged — for the employment issues or otherwise — "particularized facts that demonstrate that the directors acted with scienter, i.e.,

---

[24] Restated Certificate of Incorporation, Art. VII (¶ 1), Ex. F to Barry Decl. – ECF No. 47-6 at 13; *see supra* Statement (quoting *id.*).

[25] Opp'n – ECF No. 51 at 20–28; Reply – ECF No. 54 at 15 (noting that the plaintiff no longer asserts a lack of independence by other board members (citing Compl. – ECF No. 1 at 74–79 (¶¶ 204–21), where the plaintiff alleged that the board lacked independence because Facebook's CEO controlled it)).

that they had actual or constructive knowledge that their conduct was legally improper," *Wood*, 953 A.2d at 141, and that a majority of the board did nothing. *Rosenbloom v. Pyott*, 765 F.3d 1137, 1151–52 (9th Cir. 2014); *cf. Wood*, 953 A.2d. at 1146–47 (FDA sent letters warning Allergan that its promotional activities about Botox were misleading). The allegations are broad, and the plaintiff did not state facts specific to each director "demonstrating that at least half of them could not have exercised disinterested business judgment in responding to a demand." *Towers*, 912 F.3d at 539 (quoting *Desimone*, 924 A.2d at 943). Also, as Facebook points out, all of the "red flag" events occurred before four of the nine directors joined the board, and most occurred before a fifth member joined the board.[26]

Second, as to the directors' alleged substantial liability for having approved Facebook's allegedly false assertions in the proxy statements about its commitment to diversity, the plaintiff contends that the proxy statements omitted three facts that would have been material and contradicted the assertions in the proxy statements: (1) the board was not committed to diversity, never wanted minority candidates, and wanted minorities to be seen and not heard; (2) the lack of an independent chair resulted in great harm to Facebook because the chair, as Facebook's CEO, engaged in unlawful conduct in the form of discriminatory advertising, hiring, and pay practices, and (3) executive compensation was based "in large part" on the unlawful practices.[27] These are not facts: these are conclusions. And given Facebook's exculpatory clause, the plaintiff did not plead particularized facts that the directors had actual or constructive knowledge that their conduct was legally improper. *Wood*, 953 A.2d at 141; *see In re Facebook*, 367 F. Supp. 3d at 1124.

Third, the plaintiff alleged that CEO Zuckerberg and COO Sandberg cannot exercise independent and disinterested judgment because they are Facebook executives, and Ms. Sandberg is "not independent of Zuckerberg."[28] That allegation does not sufficiently plead that they are interested. "The mere fact that Zuckerberg is a controlling shareholder is not enough to establish

---

[26] Mot. – ECF No. 46 at 20–21; Reply – ECF No. 54 at 12.
[27] Opp'n – ECF No. 51 at 22–25 (citing Compl. – ECF No. 1 at 38–39, 42, 49–51 (¶¶ 102, 109, 118, 121)).
[28] *Id.* at 20–21.

ORDER – No. 20-cv-04444-LB                    11

his lack of independence because that would eviscerate the disinterested prong of the demand futility text and would find a director involved in the day-to-day running of a company to be 'interested' under any set of facts." *In re Facebook*, 367 F. Supp. 3d at 1128 (quotation omitted). Also, Mr. Zuckerberg's status "does not automatically mean that the other [directors] are incapable of exercising judgment. . . . [The plaintiff makes no] particularized allegations of relationships between the directors and [Mr. Zuckerberg] demonstrating that the directors are beholden to [him]." *Id.* (quotation omitted).

* * *

In sum, the plaintiff did not plead futility with particularity.

**2. Forum-Selection Clause**

Facebook's May 22, 2012 Restated Certificate of Incorporation has a forum-selection clause that provides that the Court of Chancery in the state of Delaware is the exclusive forum for derivative actions (like this) and actions asserting breaches of a fiduciary duties by directors.[29] It is enforceable against the plaintiff.

Courts enforce a forum-selection clause through the doctrine of forum non conveniens. *Atl. Marine Const. Co. v. U.S. Dist. Court for W. Dist. of Tex.*, 571 U.S. 49, 61 (2013). Normally, to prevail on a motion to dismiss on the ground of forum non conveniens, a defendant must show an adequate alternative forum and that the balance of private and public factors favors dismissal in favor of the other forum. *In re Facebook*, 367 F.3d at 1119; *see Atl. Marine*, 571 U.S. at 58, 62–63. But with a valid forum-selection clause, the clause is "given weight in all but the most exceptional circumstances." *Atl. Marine*, 571 U.S. at 63. The court must enforce the clause "unless the contractually selected forum affords the plaintiffs no remedies whatsoever." *In re Facebook*, 367 F. Supp. 3d at 1119 (quoting *Yei A. Sun v Advanced China Healthcare, Inc.*, 901 F.3d 1081, 1092 (9th

---

[29] Restated Certificate of Incorporation, Ex. F to Barry Decl. – ECF No. 47-6 at 14 (Art. IX); *see supra* Statement (quoting clause).

1   Cir. 2018)). Also, with a forum-clause, the court does "not consider arguments about the parties'

2   private interests." *Atl. Marine*, 571 U.S. at 64.

3       When parties agree to a forum-selection clause, they waive the right to challenge the
4       preselected forum as inconvenient or less convenient for themselves or their witnesses, or
        for their pursuit of the litigation. A court accordingly must deem the private-interest factors
5       to weigh entirely in favor of the preselected forum.

6   *Id.* "As a consequence, a district court may consider arguments about public-interest factors only."

7   *Id.* There are five public-interest factors considered by courts in this circuit:

8       (1) local interest in the lawsuit; (2) the court's familiarity with the governing law; (3) the
        burden on local courts and juries; (4) congestion in the court; and (5) the costs of resolving
9       a dispute unrelated to a particular forum.

10  *Bridgemans Serv. Ltd. v. George Hancock, Inc.*, No. 14-CV-1714-JLR, 2015 WL 4724567, at *4

11  (W.D. Wash. Aug. 7, 2015) (citing *Boston Telecomm. Grp. Inc., v. Wood*, 588 F.3d 1201, 1211 (9th

12  Cir. 2009)). The Supreme Court has identified the same set of public interests. *Atl. Marine*, 571 U.S.

13  at 63 n.6 ("Public-interest factors may include the administrative difficulties flowing from court

14  congestion; the local interest in having localized controversies decided at home; [and] the interest in

15  having the trial of a diversity case in a forum that is at home with the law.") (quotation omitted).

16  "The party challenging a valid forum selection clause must show that the public interest factors

17  'overwhelmingly disfavor' enforcement . . . ." *Bridgemans*, 2015 WL 4724567, at *4 (quoting *Atl.*

18  *Marine*, 571 U.S. at 67. Because the court considers only public-interest factors, "the practical result

19  is that forum-selection clauses control except in unusual cases." *Atl. Marine*, 571 U.S. at 64.

20      The plaintiff contends that the forum-selection clause cannot be enforced against her because (1)

21  it would deprive her of a forum to litigate her § 14(a) claim, and (2) she bought her shares on May

22  21, 2012, and the Restated Certificate of Incorporation was dated (and effective on) May 22, 2012.[30]

23      First, following the holding in *In re Facebook*, the Court of Chancery does not have discretion

24  to hear the federal claim, but this court has discretion to sever the federal claim, dismiss it, and

25  dismiss the remaining state claims in favor of the Delaware forum. *In re Facebook*, 367 F.3d at

26  1120. In *In re Facebook*, a case where the plaintiff here was also a plaintiff, the court dismissed the

27

28  [30] Opp'n – ECF No. 51 at 28–32.

1   § 14(a) claim for failure to make a pre-suit demand or plausibly allege futility, severed the claim,

2   enforced the same forum-selection clause, and dismissed the state claims without prejudice to

3   reassertion of the claims in the Delaware forum. *Id.* at 1120–22. The court does the same here.

4       The forum-selection clause may bar the § 14(a) claim too: the Delaware Court of Chancery is

5   the "sole and exclusive forum for [] any derivative action." [31] Courts must "enforce a forum-

6   selection clause unless the contractually selected forum affords the plaintiffs no remedies

7   whatsoever." *Yei A. Sun v. Advanced China Healthcare*, 901 F.3d 1081, 1089–92 (9th Cir. 2018

8   (applying *Richards v. Lloyd's of London*, 135 F.3d 1289, 1296 (9th Cir. 1998) (applying similar

9   analysis and enforcing a foreign forum (England)); *Seafarers Pension Plan on behalf of Boeing Co.*

10  *v. Bradway*, No. 19 C 8095, 2020 WL 3246326, at *1, 2, 4 (N.D. Ill. June 8, 2020) (rejecting the

11  argument that enforcing a similar clause forced a shareholder to file a state derivative action instead

12  of a § 14(a) derivative action, enforcing the forum clause, and dismissing the complaint for forum

13  non conveniens).[32] Given the holding in the previous paragraph, the court does not reach the issue.[33]

14      Second, the clause applies even though the plaintiff bought her shares one day before the

15  effective date of the forum-selection clause because the claims accrued years after the clause's

16  effective date. That distinguishes this case from *In re Facebook, Inc., IPO Securities & Derivative*

17  *Litigation*, where the claims accrued on the date of Facebook's IPO — on May 18, 2012 — before

18  the forum-selection clause went into effect on May 22, 2021. The forum-selection clause thus was

19  not enforceable. 922 F. Supp. 2d 445, 462–63 (S.D.N.Y. 2013), *aff'd*, 797 F.3d 148 (2d Cir. 2015).

20  By contrast, when claims accrue after the effective date of the forum-selection clause, courts have

---

[31] Restated Certificate of Incorporation, Ex. F to Barry Decl. – ECF No. 47-6 at 14 (Art. IX).

[32] Mot. – ECF No. 46 at 31–32 & n.9 (collecting cases).

[33] The defendants cite *Sun* for its holding that enforcing a California-forum clause — even if it resulted in an inability to pursue claims under the Washington State Securities Act — was appropriate because the plaintiffs still had remedies under California law for fraud, breach of fiduciary duty, and negligent misrepresentation. Mot. – ECF No. 46 at 31 (citing *Sun*, 901 F.3d at 1089–90, 1093). But in *Sun*, the defendant's counsel committed at oral argument to not challenging the applicability of the Act in California courts, and the district judge previously ordered the defendant to not contest the applicability of California securities law to the transaction at issue. *Sun*, 901 F.3d at 1092–93. Thus, unlike here, the plaintiffs in *Sun* retained their full remedies. *Id.* at 1093. That said, Facebook's many collected cases in footnote 9 may establish the point, but the court does not need to decide the issue.

United States District Court
Northern District of California

enforced the clause. *In re Stamps, Inc. Stockholder Deriv. Litig.*, No. CV 19-4272-MWF (SKx), 2020 WL 3866898, at *5–6 (C.D. Cal. July 8, 2020) (collecting cases and distinguishing *In re Facebook*, 922 F. Supp. 2d at 463); *In re: CytRx Corp. Stockholder Derivative Litig.,* No. CV 14-6414-GHK (PJWx), 2015 WL 9871275, at *2–4 & n.2 (C.D. Cal. Oct. 30, 2015) (same).

\* \* \*

In sum, the court dismisses the state claims for forum non conveniens without prejudice to reassertion of the claims in the Delaware Court of Chancery.

### 3. Motion to Dismiss § 14(a) Claim

The plaintiff contends that statements in the 2019 and 2020 proxy statements — that Facebook is committed to diversity — are materially false because Facebook in fact was not committed to diversity.[34] She alleged that the defendants knowingly failed to disclose fraudulent practices, knew the statements were false and misleading, and disregarded their responsibility to safeguard the company against wrongdoing ("indicat[ing that] they knowingly adopted . . . a business strategy that incorporated the unlawful discriminatory practices . . . in advertising and hiring/promotion/pay[.])"[35] These allegations — as the defendants assert — sound in fraud.[36] The plaintiff limited her claim to negligence in her opposition.[37] Even under a Rule 8(a) standard, the plaintiff does not plausibly plead a materially false statement because the aspirational assertions in the proxy statements are non-actionable, the allegations do not support the claim of widespread unlawful practices, and she does not allege that the proxies were a causal link to a loss-generating corporate action.

To state a claim under §14(a) and SEC Rule 14a-9, the plaintiff must allege that the proxy statements contained either (1) a false or misleading declaration of material fact, or (2) an omission of material fact that makes any portion of the statement misleading. 15 U.S.C. § 78j(b); 17 C.F.R. § 240.14a-9; *Desaigoudar*, 223 F.3d at 1022. The plaintiff must specify each statement

---

[34] Mot. – ECF No. 46 at 33–35; Compl. – ECF No. 1 at 37 (¶¶ 94–98).

[35] *See, e.g.*, Compl. – ECF No. 1 at 14 (¶ 26), 58 (¶ 142), 72 (¶ 191).

[36] Mot. – ECF No. 46 at 32–33.

[37] Opp'n – ECF No. 51 at 33.

alleged to be misleading and the reason or reasons why the statement is misleading. 15 U.S.C. § 78u-4(b)(1); *Desaigoudar*, 223 F.3d at 1023. "[A] Section 14(a), Rule 14a-9 plaintiff must demonstrate that the misstatement or omission was made with the requisite level of culpability and that it was an essential link in the accomplishment of the proposed transaction." *Id*.

The plaintiff did not plausibly plead an actionable false statement.

First, courts hold that similar statements are non-actionable puffery or aspirational (and hence immaterial). *See, e.g.*, *Retail Wholesale & Dep't Store Union Loc. 338 Ret. Fund v. Hewlett-Packard Co.*, 845 F.3d 1268, 1276 (9th Cir. 2017) (statements "to commit to certain 'shared values . . . not capable of objective verification'"); *Lopez v. Ctpartners Exec. Search, Inc.*, 173 F. Supp. 3d 12, 19, 26–29 (S.D.N.Y. 2016) (company's statements about commitment to a "diverse workforce" and "an inclusive and positive working environment" were "immaterial puffery"); *Nathanson v. Polycom, Inc.*, 87 F. Supp. 3d 966, 976–77 (N.D. Cal. 2015) (commitment to ethical practices "'inherently aspirational and hence immaterial'"); *Retail Wholesale & Dep't Store Union Loc. 338 Ret. Fund v. Hewlett Packard Co.*, 52 F. Supp. 3d 961, 965, 970 n.2 (N.D. Cal. 2014) ("commitment to highest standards of governance [is] quintessential, non-actionable puffery"), *aff'd*, 845 F.3d 1268 (9th Cir. 2017).

Second, the allegations do not support the claim of widespread unlawful practices. The fact allegations about the board's composition and selection process are inaccurate, as discussed above. The discriminatory advertising practices were addressed by March 2019. The two newspaper articles about diversity and inclusion in hiring are not inconsistent with a commitment to diversity. The plaintiff did not plead plausible facts about discriminatory practices in advertising, hiring, and pay that render the statements misleading.

Third, the plaintiff identifies no basis for inferring that the statements (and the omission of the directors' alleged lack of commitment to diversity, the lack of an independent chair, and the effect on executive compensation) formed an essential link to a loss-generating corporate action. *Kelley v. Rambus, Inc.*, No. C 07–1238 JF (HRL), 2008 WL 5170598, at *7 (N.D. Cal. Dec. 9, 2008); *In re Paypal Holdings, Inc.*, No. 17-cv-00162-RS, 2018 WL 466527, at *4 (N.D. Cal. Jan. 18, 2018). She alleged harm in the form of reelection of directors, the approval of compensation to directors

who helped perpetuate the unlawful practices, and the retention of Mr. Zuckerberg as chair.[38] These conclusory allegations do not establish causation. *Hastings*, 2019 WL 3815722, at *15 (allegations of excessive executive compensation and loss of corporate goodwill do not establish loss causation); *see In re JPMorgan Chase Derivative Litig.*, No. 2:13–cv–02414–KJM–EFB, 2014 WL 5430487, at *24 (E.D. Cal. Oct. 24, 2014) (no proximate cause in § 14(a) claim based on allegations that shareholders would have voted for different directors because it was implausible that "by electing different directors JPMorgan could have avoided the entirety of the harm it suffered as a result of its RMBS business").

## CONCLUSION

The court grants the motion to dismiss the federal claim under Rule 23.1 and Rule 12(b)(6) and dismisses the claim with leave to amend within 21 days. (The parties may stipulate to a later date.) If the plaintiff amends the complaint, she must attach as an exhibit a blackline of the amended complaint.

The court grants the motion to dismiss the remaining state claims for forum non conveniens and dismisses the claims without prejudice to reassertion of the claims in the Delaware Court of Chancery.

This disposes of ECF No. 46.

**IT IS SO ORDERED.**

Dated: March 19, 2021

_____
LAUREL BEELER
United States Magistrate Judge

---

[38] *Id.* at 35.